Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER JONES, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| DSP GROUP, INC., SHIRA FAYANS BIRENBAUM, OFER ELYAKIM, THOMAS A. LACEY, CYNTHIA L. PAUL, YAIR SEROUSSI, NORMAN P. TAFFE, and KENNETH H. TRAUB, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Christopher Jones ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against DSP Group, Inc. ("DSP" or the "Company") and the members of DSP's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which DSP will be acquired by Synaptics Incorporated ("Synaptics") through Synaptics's subsidiary Osprey Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On August 30, 2021, DSP and Synaptics issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated August 30, 2021 (the "Merger Agreement") to sell DSP to Synaptics. Under the terms of the Merger Agreement, each DSP stockholder will receive $22.00 in cash for each share of DSP common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $532 million.

3. On October 25, 2021, DSP filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that DSP stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things, the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs"). Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, DSP's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to

enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.  The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company is headquartered in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8.  Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of DSP.

9.  Defendant DSP is a Delaware corporation, with its principal executive offices located at 2055 Gateway Place, Suite 480, San Jose, California 95110.  The Company is a global leader in wireless chipsets for a wide range of smart-enabled devices.  DSP's common stock trades on the Nasdaq Global Select Market under the ticker symbol "DSPG."

10. Defendant Shira Fayans Birenbaum ("Birenbaum") has been a director of the Company since April 2021.

11. Defendant Ofer Elyakim ("Elyakim") has been Chief Executive Officer ("CEO") of the Company since July 2009, and a director since May 2011.

12. Defendant Thomas A. Lacey ("Lacey") has been a director of the Company since May 2012.

13. Defendant Cynthia L. Paul ("Paul") has been a director of the Company since April 2018.

14. Defendant Yair Seroussi ("Seroussi") has been a director of the Company since February 2002.

15. Defendant Norman P. Taffe ("Taffe") has been a director of the Company since May 2013.

16. Defendant Kenneth H. Traub ("Traub") has been non-executive Chairman since May 2017, and a director of the Company since May 2012.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

18. Synaptics is a leading worldwide developer and supplier of custom-designed semiconductor solutions. Its current served markets include Internet of Things ("IoT") personal computer, and Mobile. Synaptics delivers complete chip, firmware and software semiconductor solutions that include connectivity products, audio input and output System-On-Chips ("SoCs"), high-definition video and vision SoCs, SoCs with artificial intelligence capabilities, touch controllers, touchpads, display drivers and fingerprint biometric sensors. Synaptics is a market leader in providing premium mixed signal semiconductor solutions to its target markets. Its original equipment manufacturer ("OEM") customers include many of the world's largest OEMs for smart home devices, automotive solutions, notebook computers and peripherals, smartphones and tablets, and many large

OEMs for audio and video products. Synaptics generally supplies its product solutions to OEM customers through their contract manufacturers, which take delivery of products and pay directly for such products.

19. Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Synaptics.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. DSP is a leading global provider of wireless chipset solutions for converged communications, delivering system solutions that combine semiconductors and software with reference designs. The Company provides a broad portfolio of wireless chipsets integrating VoIP, Wi-Fi, PSTN and DECT technologies with state-of-the-art application processors and related software. DSP also enables converged voice, audio and data connectivity across diverse consumer products – from Unified Communications and cordless phones to home gateways, wearables and connected multimedia screens. DSP's Home segment consists of SmartHome products, which are comprised of the Company's home gateway, and home automation and cordless telephone products. The Company's Unified Communications segment consists of a comprehensive set of solutions for Unified Communications office products. The Company's SmartVoice segment consists of products targeted at mobile, IoT and wearable device markets that incorporate DSP's noise suppression and voice quality enhancement HDClear technology, as well as other third-party advanced voice processing, always on and sensor hub functionalities.

21. In July 2020, DSP completed the acquisition of SoundChip SA ("SoundChip"), a privately held Swiss company. SoundChip is a leading supplier of active noise cancellation ("ANC") technology, engineering services, design tools and production-line test systems for headsets. The acquisition combines SoundChip's proven capabilities in hybrid ANC with DSP's SmartVoice advanced low-power voice processing platform, algorithms, and mixed-signal expertise to streamline

the delivery of cutting-edge wireless and true wireless stereo headsets, from concept through to manufacturing.

22. On August 2, 2021, DSP announced its second quarter 2021 financial results. The Company achieved record Internet of Audio Things ("IoAT") Revenues of $24.8 million, up 35% year over year. Non-GAAP net income and diluted earnings per share for the second quarter of 2021 were $3.2 million and $0.12, respectively, as compared to non-GAAP net income and diluted earnings per share of $1.6 million and $0.06, respectively, for the second quarter of 2020. Non-GAAP gross margin of 54.1% for the quarter was a Company record. GAAP operating loss was $0.4 million and non-GAAP operating income was $3.3 million, compared to GAAP operating loss of $1.4 million and non-GAAP operating income of $1.0 million for the second quarter of 2020. Reflecting on the results and looking to the future, defendant Elyakim stated:

> We are very pleased with our outstanding results. We successfully navigated tight supply chain challenges, posted a record quarter on virtually all fronts, and surpassed our guidance on most financial metrics. Revenues of $35.8 million were at the high-end of our guidance range, up 26% year-over-year and 10% sequentially. Revenue growth was driven by strong demand for voice-centric products, predominantly in our IoAT businesses, which reached record revenues of $25 million, up 35% year over year and 19% sequentially and comprising 69% of total revenues. The favorable mix of products and the solid revenue growth propelled record high non-GAAP gross margins of 54.1%.
>
> Looking ahead to the third quarter, we expect the solid momentum in our business to continue, translating into revenue growth both sequentially and year over year. These are exciting times for DSP Group as markets shift favorably in our direction, driving record demand for our core expertise. These promising trends are propelled by new models of living, working and interacting, all of which increasingly rely on voice-centric products delivered by our IoAT businesses. The breadth and depth of our technology offering, including a comprehensive portfolio of software and silicon, uniquely positions DSP Group to capitalize on these large growth opportunities. We are experiencing record design activity, which positions us well for continued revenue growth ahead.

**The Proposed Transaction**

23. On August 30, 2021, DSP and Synaptics issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

SAN JOSE, Calif., Aug. 30, 2021 -- Synaptics Incorporated (Nasdaq: SYNA) and DSP Group, Inc. (Nasdaq: DSPG) today announced the signing of a definitive agreement, unanimously approved by the boards of directors of both companies, whereby Synaptics acquires DSP Group, a leading global provider of voice and wireless chipset solutions for converged communications, at $22.00 per share in an all-cash transaction. The combination is anticipated to generate annual run rate synergies of $30 million for the new entity to be realized within 12 months of closing and is immediately accretive to Synaptics' non-GAAP earnings.  The transaction is expected to be financed through a combination of cash on hand and a fully committed, incremental debt financing arrangement with a projected close by the end of calendar year 2021, subject to DSP Group shareholder approval and customary closing conditions.

DSP Group has leadership positions across multiple markets in the Internet of Audio Things (IoAT) with significant growth opportunities in low power SmartVoice, unified communications & collaboration, and wireless IoT devices.  Most of these solutions are quite relevant to Synaptics' existing customer base, furthering the strategy of cross-selling portfolio devices.

Synaptics recently announced its Low Power Edge AI initiative, which opens a significant long-term opportunity with ABI research predicting approximately 2.5 billion TinyML units to be sold by 2030.  The addition of DSP Group's best-in-class SmartVoice products to Synaptics' Katana smart vision platform creates a complete portfolio that can both serve existing customer needs and address the significant future market.  In addition, the combination further strengthens Synaptics' industry-leading wireless connectivity portfolio by adding DECT Ultra Low Energy (ULE), which enables a fully-featured intelligent home security solution.

"We continue to invest in technologies that tilt our product mix toward IoT applications," said Michael Hurlston, President and CEO of Synaptics.  "DSP Group's expertise in SmartVoice and ULE wireless solutions, coupled with Synaptics' leadership position in far-field speech recognition and IoT directed Wi-Fi/BT combos enables us to deliver increasingly differentiated solutions to our combined customer base, while positioning us to lead the transition to AI enabled devices at the edge of the network."

"We are excited to join forces with Synaptics, a recognized leader in products for IoT. This combination provides a great result for our shareholders who have supported us through this journey, delivering meaningful and certain value," said Ofer Elyakim, CEO of DSP Group.  "Our complementary portfolios together with the combination of our world-class engineering teams creates an exciting opportunity for DSP Group's core technology to extend further into our existing customers' product portfolio."

"The DSP Group board of directors unanimously supports this transaction as it represents an excellent outcome for our shareholders," commented Ken Traub, Chairman of the Board of Directors, DSP Group.  "We would like to thank DSP Group's management and employees for their dedication to executing our strategy and congratulate them on this exciting achievement."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Advisors

Goodwin Procter LLP is serving as legal counsel and Barclays is providing committed financing to Synaptics. Goldman Sachs & Co. LLC is serving as financial advisor and Morrison & Foerster LLP is serving as legal counsel to DSP Group.

**Insiders' Interests in the Proposed Transaction**

24. DSP insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of DSP.

25. Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Synaptics. Pursuant to the Merger Agreement, all outstanding Company restricted stock units ("RSUs") held by non-employee directors will vest and convert into the right to receive the Merger Consideration. The following table summarizes the value of RSUs that DSP's insiders non-employee directors stand to receive:

| Name | Unvested Company RSU Awards (#)(1) | Value of Unvested Company RSU Awards ($)(2) |
|---|---|---|
| Shira Fayans Birenbaum | 4,824 | $106,128 |
| Thomas A. Lacey | 6,064 | $133,408 |
| Cynthia L. Paul | 6,064 | $133,408 |
| Yair Seroussi | 6,064 | $133,408 |
| Norman Taffe | 6,064 | $133,408 |
| Kenneth Traub | 6,064 | $133,408 |

26. Moreover, defendant Elyakim's outstanding Company performance stock units ("PSUs") will vest and convert into the right to receive the Merger Consideration upon closing of the merger. The following table summarizes the value of PSUs that defendant Elyakim stands to receive:

| Name | Company PSU Awards (#)(1) | Aggregate Payments for Vested PSU Awards ($)(2) |
|---|---|---|
| Ofer Elyakim | 115,000 | $2,530,000 |

27. Further, each of DSP's named executive officers has a written employment agreement with the Company which provides for certain notice payments upon a qualifying termination, as set forth in the following table:

| Name | Payment Amount |
|---|---|
| Ofer Elyakim | $777,050(1) |
| Dror Levy | $369,718(2) |
| Tali Chen | $176,159(3) |

28. In addition, if they are terminated in connection with the Proposed Transaction, DSP's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($) (2)(3)(4)(5) | Prerequisites /Benefits ($) (6) | Total ($) |
|---|---|---|---|---|
| Ofer Elyakim | $1,347,500 | $4,867,500 | $303,000 | $6,518,000 |
| Dror Levy | $667,130 | $1,630,728 | $156,718 | $2,454,576 |
| Tali Chen | $413,243 | $1,402,412 | $81,520 | $1,897,175 |

**The Proxy Statement Contains Material Misstatements or Omissions**

29. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to DSP's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

30. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Goldman.

***Material Omissions Concerning the Company's Financial Projections and Goldman Sachs's Financial Analyses***

31. The Proxy Statement omits material information regarding the Company's financial projections.

32. For example, the Proxy Statement fails to include the line items underlying the Company's financial projections.

33. The Proxy Statement also omits material information regarding Goldman Sachs's financial analyses.

34. The Proxy Statement describes Goldman Sachs's fairness opinion, and the various valuation analyses it performed in support of its opinion. However, the description of Goldman Sachs's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, DSP's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman Sachs's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

35. With respect to Goldman Sachs's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the Company's terminal values; (ii) quantification of the inputs and assumptions underlying the discount rate range of 8.0% to 9.0% utilized by Goldman Sachs in connection with the analysis; and (iii) quantification of the Company's net cash.

36. With respect to Goldman Sachs's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate of 8.5% utilized by Goldman Sachs in connection with that analysis; (ii) quantification of the Company's net cash utilized in the analysis; and (iii) quantification of the number of fully diluted shares of Company stock utilized in the analysis.

37. With respect to Goldman Sachs's *Selected Companies Analysis*, the Proxy Statement fails to include the individual multiples and financial metrics for each of the comparable companies analyzed.

38. Without such undisclosed information, DSP stockholders cannot evaluate for themselves whether the financial analyses performed by Goldman Sachs were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Goldman Sachs's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

39. The omission of this material information renders the statements in the "Certain Company Forecasts" and "Opinion of the Company's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

40. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of DSP will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

41. Plaintiff repeats all previous allegations as if set forth in full.

42. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

43. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman Sachs. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

44. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

45. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

46. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

### COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

47. Plaintiff repeats all previous allegations as if set forth in full.

48. The Individual Defendants acted as controlling persons of DSP within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or

directors of DSP, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

51. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as

controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, DSP's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of DSP, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to DSP stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

| | |
|---|---|
| Dated: November 10, 2021 | **WEISSLAW LLP** <br> Joel E. Elkins <br><br> By: */s/ Joel E. Elkins* <br><br> Joel E. Elkins <br> 611 Wilshire Blvd., Suite 808 <br> Los Angeles, CA 90017 <br> Telephone: 310/208-2800 <br> Facsimile: 310/209-2348 <br>        -and- <br> Richard A. Acocelli <br> 305 Broadway, 7th Floor <br> New York, NY 10007 <br> Telephone: 212/682-3025 <br> Facsimile: 212/682-3010 <br><br> *Attorneys for Plaintiff* |